UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARY E. PARADISE,

    Plaintiff,

vs.                                          CASE NO. 3:07-cv-225-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the Commissioner) denying her claim for disability insurance benefits (DIB). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #20, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #21, D's Brief). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated October 14, 2008 (Doc. #24). The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **REVERSED and the case is remanded for further proceedings**.

## I. Procedural History

In the instant action, Plaintiff protectively filed an application for disability insurance benefits on March 16, 2001, alleging an onset of disability of May 28, 1998 (Tr. 111-13). The record established Plaintiff's date last insured was December 31, 2003 (Tr. 128, 141). Thus, Plaintiff must establish disability occurred prior to that date. Plaintiff's application was denied initially and upon reconsideration. Thereafter, Plaintiff timely requested a hearing, which was held on January 21, 2003 in Daytona Beach, Florida before administrative law judge (ALJ) Arthur W. Stacy (Tr. 719-55). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Joseph Agrusa. Plaintiff was represented by non-attorney counsel, Mr. Gil Spruance, during the underlying administrative phase of this case.[1]

On March 13, 2003, ALJ Stacy issued a hearing decision denying Plaintiff's claim (Tr. 47-60). Plaintiff requested review of the hearing decision by the Appeals Council (AC), which was granted. On October 1, 2004, the AC vacated the hearing decision and remanded the case for the ALJ to give further consideration to the treating source opinions in the record, particularly those of Dr. Bao T. Pham and Dr. Robert Groble that were specifically mentioned in the remand order, to give further consideration to the claimant's maximum residual functional capacity, and, if warranted by the expanded record, to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Tr. 87-90).

---

[1]Although the transcript records of the January 21, 2003 and the July 18, 2005 hearings identify Mr. Spruance as an attorney for the claimant (Tr. 719, 756), Mr. Spruance indicated he was not an attorney when he accepted the appointment to represent Ms. Paradise as representative of record (*see* Tr. 41-42). Mr. Spruance is a vocational expert and the president of Spruance & Associates, Inc., a Disability Management Company (Tr. 42).

As required by the AC remand, a subsequent hearing was held by ALJ James R. Russell on July 18, 2005 in Jacksonville, Florida (Tr. 756-93). Plaintiff again appeared and testified at the remand hearing. Vocational expert Donna Mancini also appeared and testified. Plaintiff was represented by Mr. Gil Spruance at the administrative hearing. In a decision dated October 18, 2005, the ALJ determined Plaintiff could perform her past relevant work as it is customarily performed in the economy and denied her application for disability insurance benefits (Tr. 20-32). Plaintiff again requested review of the hearing decision by the AC; however, the AC denied this request (Tr. 12-15). Thus, ALJ Russell's decision of October 18, 2005 became the final decision of the Commissioner.

The instant complaint was filed in federal court on March 26, 2007 (Doc. #1) by Plaintiff's current counsel of record, Mr. L. Jack Gibney, Jr., Esq. The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## II. Social Security Act Eligibility
## and the Standard of Review

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 404.1505.[2] The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2008 edition.

3

(11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 127, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but may be less than a preponderance - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d

1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) (no person shall be considered to be under a disability unless he or she furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require).  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

### III. Analysis and Background Facts

Plaintiff Mary E. Paradise was born on March 30, 1962 (Tr. 111).  Plaintiff was forty-three years old at the time of the remand hearing (Tr.760).  The record reveals Plaintiff has a high school diploma and completed three years of post-secondary education (Tr. 138).  Plaintiff completed special training for an emergency medical technician, a life and health insurance agent, a radiologic technician and a computed axial tomography scan technician (CAT scan technician) (Tr. 138).  Plaintiff has past relevant work as CAT scan/radiological technologist, insurance utilization review clerk, licensed insurance sales agent and benefits counselor, and emergency department clerk/registrar (Tr. 133, 163).  In the Disability

5

Report-Adult signed on February 28, 2001, Plaintiff stated her ability to work was limited by cervical discectomy with bone fusion that resulted in an inability to lift, push or pull patients, equipment and supplies due to pain, spasms and decreased strengths and movement (Tr. 132). In the Reconsideration Disability Report the Plaintiff completed on July 20, 2001, Plaintiff alleged her depression was severe (Tr. 171-74). Pain relief and depression/anxiety relief medications have been prescribed for Plaintiff regularly throughout the time period relevant to the DIB claim (*see, e.g.*, Tr. 177-82, 184). Plaintiff testified at both administrative hearings as to the effects her mental impairment, which she identified as major depression, had on her activities of daily living and her ability to work (Tr. 733, 765-67, 775, 785). On the April 30, 2001 pain questionnaire, Plaintiff noted , "My education and training are of a highly technical [and] possibly life threatening nature. At my current physical [and] emotional state of being I cannot work in my career choice. Inability to concentrate, lack of expedient reactions, inability to sit, walk or stand for more than 45-60 [minutes] without 15-20 [minute] break-time, drowsiness from lack of sleep and almost constant gnawing/grating/spasm pain make it impossible to do my work." (Tr. 162.)

Plaintiff raises three issues on appeal. First, Plaintiff questions whether the ALJ adequately evaluated the areas of concern identified by the Appeals Council in the remand order. Second, Plaintiff challenges the ALJ's evaluation of the "physical components of the Plaintiff's claim" was inadequate. Third, Plaintiff claims the ALJ erred in failing to include the effects of her nonexertional impairments in the hypothetical questions that were posed to the vocational expert.

Defendant responds that substantial evidence supports the overall decision that Plaintiff could return to her past relevant work and was not disabled. More specifically,

Defendant argues the ALJ properly considered Plaintiff's physical and mental impairments in evaluating the medical opinions of Plaintiff's treating sources and the medical evidence of record, and therefore asserts the ALJ did not need to include Plaintiff's pain and mental impairments in a hypothetical question to the vocational expert.

The Court, however, finds the Commissioner's argument ignores flaws in the ALJ's decision that require the case be remanded for reconsideration. Specifically, the Court's independent review of the record as a whole, as required under *Bloodsworth*, 703 F.2d at 1239, reveals the ALJ misconstrued the record evidence of Plaintiff's mental health impairment when making the explicit finding that Plaintiff did not have a severe mental impairment. This error was identified, in part, from the ALJ's inaccurate review of the evidence from Dr. Groble, Plaintiff's treating psychiatrist. The volume of evidence submitted by Plaintiff in support of a severe mental impairment is more than sufficient under the prevailing law of the Eleventh Circuit to meet Plaintiff's burden of persuasion at step two of the sequential evaluation process. Thus, the ALJ's decision was not reached in accordance with the Regulations and the law of this circuit, and is not supported by substantial evidence. Even if the record contained substantial evidence favorable to the Commissioner, that "may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached." *Russ v. Barnhart*, 363 F.Supp. 2d 1345, 1347 (M.D. Fla. 2005). Such is the case in this matter.

In sum, the AC vacated ALJ Stacy's decision and remanded the case for further administrative proceedings for the administrative judge on remand to: (1) give further consideration to the treating source opinions pursuant to the provisions of 20 C.F.R. §

7

404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence; (2) give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to the evidence of record; (3) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupation base, if such vocational evidence was warranted on the expanded record; and (4) address the evidence submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision (Tr. 87-90). Plaintiff posits that ALJ Russell did not follow-through with all the directives of the AC remand (*see* P's Brief at 6-11). The Court agrees with Plaintiff's assertions regarding consideration of the evidence from Dr. Robert E. Groble and the evaluation of Plaintiff's mental impairment. These errors, as discussed more fully below, require the case be remanded to the Commissioner for further administrative proceedings.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

### *The ALJ's Consideration of Treating Source Statements*

Of relevance on this issue is the "little weight" the ALJ gave the opinion evidence of Dr. Groble, Plaintiff's treating psychiatrist from May 2002 through at least June 2005 (Tr. 577-581; *see also,* treatment notes at Tr. 452-59, 582-96, 640-51, 665-81). On March 29, 2004, Dr. Groble completed a Treating Psychiatrist's or Psychologist's Statement, on which

8

he answered fill-in-the blank questions and marked affirmative responses to the inquiries of whether Plaintiff had marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation of extended duration (Tr. 577-78). ALJ Russell gave "little weight" to the assessment of Dr. Groble, finding it was inconsistent with the medical evidence of record and not supported by Dr. Groble's treatment notes (Tr. 28). In discounting Dr. Groble's opinion, the ALJ pointed specifically to the notation that Plaintiff had experienced repeated episodes of decompensation, which the ALJ contrasted with the record of a single hospitalization for Plaintiff's mental impairment, which the ALJ further determined was not of extended duration (Tr. 28).

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ must consider all medical opinion evidence and weigh it taking into account the nature and extent of the relationship between the claimant and the medical source. 20 C.F.R. § 404.1527(d). Generally, an ALJ is required to give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not. 20 C.F.R. § 404.1527(d)(1). The ALJ may consider a physician's medical specialty and decide to give more weight to the opinions of

physicians in their areas of medical expertise and specialty. 20 C.F.R. § 404.1527(d)(5).

While the ALJ may discredit the medical opinions of treating and examining physicians, he is required to state specific reasons for doing so, particularly with regards to the treating physicians' opinions. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004). Although the special deference afforded the statements and/or opinions of treating physicians is not applicable to opinions arising out of a single consultative examination, all medical opinions must be considered in making a disability determination under the Social Security Act. See *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The United States Court of Appeals for the Eleventh Circuit has concluded "good cause" exists to discount a treating physician's opinion when: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).

In this instance, the ALJ erroneously found Dr. Groble's treatment records did not support the level of limitations indicated in Dr. Groble's treating psychiatrist statement (Tr. 28). The ALJ's finding that Dr. Groble's assessment was inconsistent with the medical evidence of record is similarly erroneous. As noted above, Dr. Groble treated Plaintiff for an extended duration of time, seeing Plaintiff no less than twenty-seven (27) times and hospitalizing Plaintiff on one occasion for a major depressive episode with suicidal ideation and planned treatment by electroconvulsive therapy (ECT) (*see* Tr. 452-59, 582-96, 640-51, 665-81). Dr. Groble's treatment notes are replete with references to Plaintiff's mental

10

condition that reflect periods of suicidal ideation (*e.g.* Tr. 582, 587, 588), anger issues (Tr. 584), anxiety issues, severe depressive episodes with Plaintiff spending multiple days in bed from physical and mental ailments (*e.g.*, Tr. 452, 590, 646), and increases and changes in medication in attempts to better control Plaintiff's mental impairments (*e.g.*, Tr. 453, 454, 583, 596).

The other mental medical evidence of record consists of the July 17, 2001 psychological evaluation (Tr. 374-78)[3] and subsequent treatment notes of Dr. Eileen Krimsky, Plaintiff's treating psychologist from August 2001 through July 2002 (Tr. 535-71), the March 29, 2001 psychiatric evaluation conducted by Dr. Harish Kher, M.D. at the request of Plaintiff's worker's compensation carrier, the hospital records from the June 27, 2004 through July 1, 2004 hospitalization for major depressive episode (Tr. 665-86), and the Psychiatric Review Technique forms (PRTF) completed by reviewing state agency psychologists on June 6, 2001 and September 6, 2001 (Tr. 360-72, 387-400).

The only medical evidence of record found to be inconsistent with Dr. Groble's stated opinion of Plaintiff's mental limitations are the PRTF reports of the state agency reviewing psychologists. However, as discussed in more detail below, these reviews of the record evidence were completed with only limited mental impairment evidence in the record.

The ALJ's reference to Dr. Groble's opinion isolated one particular aspect of the opinion. The ALJ found Dr. Groble's indication Plaintiff had experienced repeated episodes of decompensation was erroneous in light of the record evidence demonstrating only one

---

[3]Received by the SSA state agency on September 14, 2001 (*see* Tr. 374, date received stamp).

hospitalization for depression that did not last for an extended period of time (Tr. 28, 29). Selective reliance on only a limited part of the record, while ignoring other parts, is not permitted. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). In this case, however, the Court finds the error goes beyond the ALJ's reliance on a single mental limitation, among several limitations noted, as reason to discount the treating psychiatrist's opinion. The Commissioner defines episodes of decompensation as:

> . . .exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Here, the treating psychiatrist reported that during his term of treatment, Plaintiff had experienced repeated episodes of decompensation, each of extended duration, when the directions read to check that box if, "the patient has had either (a) three episodes within 1 year, or an average of once every 4 months, each lasting at least two weeks; or (b) more frequent episodes of shorter duration or less frequent episodes of longer duration, and in your judgment the duration and functional effects of the episodes are of equal severity to (a)" (Tr. 578) (emphasis in the original). Following those directions, Dr. Groble made a medical judgment call that his patient de-compensated within the defined parameters.

The Regulations further clarify that the term "repeated episodes of decompensation,

12

each of extended duration," is used when determining whether a claimant meets a Listing for presumptive disability under the Listings of Impairments.[4] When used in that context, repeated episodes of extended duration will be found by the Commissioner when the repeated episodes occur at the rate of three episodes within one year, or an average of once every four months, each lasting for at least two weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Then the Commissioner, vis-a-vis the ALJ, is called upon to use his judgment for a Listing or a Listing equivalence determination if the claimant has experienced more frequent episodes of shorter duration or less frequent episodes of longer duration. *Id.*

While the difference in "judgments" may be subtle, one is a medical opinion, the other is a SSA determination of presumptive disability reserved for the Commissioner. By analogy, the determination of disability under the Social Security Act is reserved for the Commissioner, while medical sources may state an opinion a person is disabled in their judgment and while other governmental agencies may find a person disabled under criteria different from that of the Social Security Administration. *See* 20 C.F.R. §§ 404.1503, 404.1504.

The ALJ's reliance on Dr. Groble's notation that Plaintiff had experienced repeated episodes of decompensation as a basis to discount Dr. Groble's medical opinion of

---

[4]The Listings of Impairments (the Listings) is in appendix 1 of 20 C.F.R. Pt. 404 Subpt. P. It describes for each of the major body systems impairments that the Commissioner considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a). The specific listings follow the introduction in each body system, after the heading, Category of Impairments. Within each listing, the objective medical and other findings needed to satisfy the criteria of that listing are specified. An impairment meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525 (c)(3).

Plaintiff's mental limitations was misplaced. Substantial evidence does not support the ALJ's finding that Dr. Groble's opinion was inconsistent with the medical evidence of record and not supported by his own notes of Plaintiff's treatment. Good cause did not exist to discount Dr. Groble's opinion. In accordance with the precedent in this circuit, the medical opinions of Dr. Robert Groble are now accepted as true as a matter of law. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Newton v. Astrue*, 297 Fed. Appx. 880, 883 (11th Cir. 2008);[5] *Lamp v. Astrue*, No. 3:07-cv-93-J-TEM, 2008 WL 906641, *12 (M.D. Fla. Mar. 31, 2008).

<u>*Plaintiff's Mental Impairment and Residual Functional Capacity*</u>

On remand to the ALJ, the Appeals Council specifically directed additional consideration of Plaintiff's maximum residual functional capacity (Tr. 89). The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite the claimant's impairments. 20 C.F.R. § 404.1545. When assessing the residual functional capacity of a particular claimant, the ALJ is required to consider that person's ability to meet the physical, mental, sensory, and other requirements of work. *Id.* The Eleventh Circuit has noted that the focus of an RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

In assessing Plaintiff's residual functional capacity, ALJ Russell determined Plaintiff

---

[5]Unpublished opinions of the United States Court of Appeals for the Eleventh Circuit are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2. Other unpublished opinions are similarly cited for their persuasive authority.

14

retained the capacity for a full range of light work without restriction or limitation (Tr. 30).[6]

When determining Plaintiff's severe impairments at step two of the sequential evaluation process, ALJ Russell explicitly found Plaintiff had an affective disorder that was not a severe impairment (Tr. 28). Generally speaking, an affective disorder is a class of mental disorders that are characterized by a disturbance in mood. On-Line Medical Dictionary at http://www.medilexicon.com/medicaldictionary.php (last visited March 25, 2009).

At step two of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. In this circuit, the prevailing standard remains that an impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F. 2d 1026, 1031 (11th Cir. 1986). The *McDaniel* court held the claimant's burden at step two is mild and only the most trivial of impairments may be rejected. *Id.*

In this case, Plaintiff has produced an abundance of evidence of her mental impairment. As noted above, the record is replete with treatment notes, medication

---

[6]From a physical, or exertional, standpoint, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

records, consultative mental evaluations, and treating source opinions. For example, Dr. Kher's psychiatric evaluation diagnosed Plaintiff with major depressive disorder, moderate, recurrent with a history of alcohol and polysubstance abuse in the past with the presence of moderate psychosocial stressors (Tr. 347).[7] Dr. Kher determined Plaintiff presented with a Global Assessment of Functioning (GAF) score of 65, which indicates Plaintiff was functioning "pretty well" on the date of her March 2001 visit (Tr. 347).[8] Dr. Krimsky diagnosed Plaintiff with major depressive disorder, recurrent, and pain disorder with medical and psychological features (Tr. 377). Dr. Krimsky determined Plaintiff to have a GAF score of 60-65 during her July 2001 evaluation, which indicates moderate to mild difficulties in social or occupational functioning (Tr. 377). Dr. Groble's treatment records for Plaintiff are discussed in detail above.

The only evidence of record to support the finding Plaintiff's mental impairment was

---

[7]In accordance with the *Diagnostic and Statistical Manual of Mental Disorder*, Dr. Kher utilized the multiaxial classification system to evaluate Plaintiff's condition. *See Diagnostic and Statistical Manual of Mental Disorders*, DSM-IV, 27-36 (4th ed., American Psychiatric Assoc. 2000). Under this system of assessment, Axis I refers to clinical disorders and other conditions that may be a focus of clinical attention, Axis II refers to personality disorders and mental retardation, Axis III refers to general medical conditions, Axis IV refers to psychosocial and environmental problems, and Axis V refers to the Global Assessment of Functioning. *Id.*

[8]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

not severe, is seen in Psychiatric Review Technique forms (PRTF) completed by the state agency reviewers. While the opinion of clinical psychologist Steven L. Wise, Psy.D., a state agency consultant who reviewed the record evidence on June 6, 2001 (Tr. 360-73), supports the ALJ's finding that Plaintiff did not have a severe mental impairment, this record review was completed with the only psychological evidence in the record being that of Dr. Harish Kher's psychiatric evaluation on March 29, 2001. The same is true of the PRTF completed by Val J. Bee, Psy.D., the state agency psychological consultant who reviewed the record on September 6, 2001 (Tr. 387-400). Although these opinions are considered to be those of experts, the reports of reviewing sources taken alone do not constitute substantial evidence. *See Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam); *Spencer ex rel Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam).

The medical records and opinions of treating psychologist, Dr. Eileen Krimsky, Ph.D., and treating psychiatrist Dr. Robert E. Groble, M.D., were not in the record at the time of the state agency reviews. Indeed, much of Plaintiff's mental treatment did not occur until August 2001, when Plaintiff began treatment sessions with Dr. Krimsky after Dr. Krimsky completed the psychological evaluation requested by Dr. Kher on behalf of Plaintiff's worker's compensation carrier.[9]

The ALJ did not explicitly state he relied on the reviewing psychologists reports in applying the psychiatric review technique analysis required under 20 C.F.R. § 404.1520a.

---

[9] While much of Plaintiff's mental treatment occurred after Plaintiff's alleged onset date of disability, many treatment notes reflect psychotherapy sessions occurred, and prescription medications were dispensed, prior Plaintiff's date last insured.

However, if he did not rely on these reports, the Court is left to wonder what evidence of Plaintiff's mental condition the ALJ did rely upon in determining Plaintiff had no severe mental impairment.

In assessing whether an individual's physical or mental impairments are of sufficient severity to establish disability under the Regulations, the ALJ is required to consider all of the individual's impairments regardless of whether each impairment on its own is found to be severe. 20 C.F.R. § 404.1523. The Eleventh Circuit has held that where "a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The ALJ is also required to consider all of a claimant's symptoms, and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529. Here, the ALJ has the objective test results from Dr. Krimsky's evaluation of Plaintiff that included the Minnesota Multiphasic Personality Inventory-2 (MMPI), the Milton Behavioral Health Inventory (MBHI), and the Behavioral Assessment of Pain Questionnaire (BAP) (Tr. 374-78), but which are not mentioned in the decision.

Under precedent in this circuit, the Court finds Plaintiff made the requisite showing that she had one or more severe mental impairments during the relevant time period. *See McDaniel v. Bowen*, 800 F. 1026, 1031 (11th Cir. 1986). A claimant need show only that her impairment is not so slight and its effect not so minimal. *Id.* There is not substantial evidence in the record to support the ALJ's finding that Plaintiff's mental impairment was

non-severe.

## IV. Conclusion

The Court is precluded from reweighing the evidence anew, but it is nonetheless obligated to review the record in its entirety. *Foote*, 67 F.3d at 560. The Court's independent review reveals the record differs from the ALJ's factual findings in the above-mentioned instances. Thus, it is impossible to say the ALJ's decision is supported by substantial evidence.

An ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Baker v. Barnhart*, No. 03 C 2291, 2004 WL 2032316, *8 (N.D. Ill. Sept. 9, 2004). The ALJ must also "sufficiently articulate" his assessment of the evidence to assure the court that he has considered the important evidence–so that the court may trace the path of the ALJ's reasoning to his conclusion. *Id.* After review of the ALJ's decision and the administrative record, the Court cannot find the ALJ has built the requisite accurate and logical bridge from the evidence to the conclusion.

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence or decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED** for additional proceedings consistent with this Order and Opinion.

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. The additional proceedings, should include, but are not limited to: assessment of the severity of all of Plaintiff's medically determinable impairments and, in light thereof, re-assessment of Plaintiff's RFC; re-weigh

the treating source opinions in accordance with the directions of the AC from the administrative remand order; and, if warranted, obtain additional vocational expert testimony. The ALJ shall weigh the evidence in light of the findings expressed herein.

## V. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida this 26th day of March, 2009.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
and *pro se* parties, if any